## WILLIAM J. SUTOR ET AL. v. INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY ET AL.

### Decided February 2, 1910.

**1.—Easement—Prescription.**

Evidence to show an easement in plaintiff upon a lot conveyed by him to defendant for its use for access to his own adjoining lot and as an alley or passway for the public, considered and held insufficient to show such easement either by dedication, prescription or estoppel, and which warranted a peremptory instruction for defendant.

**2.—Prescription—Way.**

Use of a vacant city lot by pedestrians in "cutting across lots" between certain points, could not be considered adverse to the owner where there was no evidence that it was done in the assertion of a right.

**3.—Estoppel.**

One permitting without objection the owner of a lot adjoining his own to let same to a tenant for building, and the tenant to erect a permanent and valuable brick building thereon would seem to be estopped from subsequently asserting against them an easement in the lot requiring the removal of such building.

**4.—Written Instrument—Parol Evidence to Alter.**

One conveying a lot to another by unqualified deed in fee simple, can not alter its effect by showing that the grantee represented that the property was to be used only in a certain way, as that it was to be left open and used only for railroad purposes, whereby the public could have access to the grantor's premises across the lot conveyed.

**5.—Railway—City Ordinance.**

A city ordinance imposing upon a railway regulations in regard to the use of its own property as a condition of a grant of certain rights by the city, is ineffective where the ordinance was not accepted by the company.

**6.—Assignment of Error.**

An assignment of error not found in the record nor presenting fundamental error, but raised for the first time in the brief, will not be considered.

Appeal from the District Court of Travis County. Tried below before Hon. Charles A. Wilcox.

*Fiset & McClendon* and *Robertson & Robertson,* for appellants.— It was error to give a peremptory instruction for defendant. International & G. N. R. Co. v. Cuneo, 47 Texas Civ. App., 622; Evans v. Scott, 37 Texas Civ. App., 373; Hall v. City of Austin, 20 Texas Civ. App., 59; Galveston, H. & S. A. Ry. Co. v. Baudat, 21 Texas Civ. App., 236; Sayles' Stats., articles 3347 and 3351.

The fact that the railroad company may at times have jointly used lot No. 1 in such a way as not to be inconsistent with the use by the public does not defeat the prescriptive right. Fitchburg R. Co. v. Page, 131 Mass., 391; Webster v. Lowell, 142 Mass., 340; Zimmerman v. Snoden, 88 Mo., 218; Patton v. State, 50 Ark., 54; Toof v. City of Decatur, 19 Ill. App., 204; Cunningham v. San Saba, 11 Texas Civ. App., 557; Elliott on Roads and Streets, section 175, note 4; page 189, note 2; 2 Dillon, section 637; 2 Greenleaf, section 545.

Evidence of long continued use by the public establishes the character of a road as public. McWhorter v. State, 43 Texas, 666; Elliott on Roads and Streets, sections 169-173.

Where one uses an easement whenever he sees fit, without asking leave and without objection, it is adverse. Garrett v. Jackson, 20 Pa. St., 331.

That intention to dedicate may be shown by conduct, and that time is a circumstance bearing upon such intention, see Evans v. Scott, 37 Texas Civ. App., 373; Missouri Pac. Ry. Co. v. Lee, 70 Texas, 499. That dedication does not require that the owner give up all right to the property dedicated, see Lamar County v. Clements, 49 Texas, 355. That intention to dedicate may be shown by parol evidence of acts showing assent, see 2 Dillon, 636; Missouri Pac. Ry. Co. v. Lee, 70 Texas, 499. That user and acquiescence for the statutory period of limitation is sufficient evidence of such intention, see 2 Dillon, sections 637, 638. That intention to dedicate is a question of fact, see Missouri Pac. Ry. Co. v. Lee, above. That dedication does not require acceptance by the authorities, and may be by individuals acting upon the faith of the dedication, see Oswald v. Grenet, 22 Texas, 100. That dedication is a question of estoppel, and acts showing dedication constitute dedication, regardless of the owner's actual intention, see Evans v. Scott and Missouri Pac. Ry. Co. v. Lee, supra; also as bearing upon the issue of dedication, see Green v. Stevens, 49 Ill. App., 24; State v. McGee, 40 Iowa, 595; Kelsey v. Furman, 36 Iowa, 614.

Limitation does not run against the city: Sayles Stats., art. 3351.

The evidence of witness Metz tended to show that the defendant company was estopped to deny the right of the Sutors to have the said lot maintained as an open public way. Harrison v. Boring, 44 Texas, 269; Lamar County v. Clements, 49 Texas, 357; Risien v. Brown, 73 Texas, 142; Weynand v. Lutz, 29 S. W., 1099.

The allegations excepted to constituted within themselves a cause of action entitling plaintiff to the relief sought, and the sustaining of said exception was fundamental error of law, apparent upon the face of the record. Wilson v. Johnson, 94 Texas, 276; Harris v. Petty, 66 Texas, 516; Texas Brewing Co. v. Templeman, 90 Texas, 281; City of San Antonio v. Talerico, 98 Texas, 155; San Antonio Trac. Co. v. Faircloth, 97 S. W., 507.

*S. R. Fisher, J. H. Tallichet* and *S. W. Fisher (King & Morris,* of counsel), for appellees.

FISHER, CHIEF JUSTICE.—This suit was instituted February 19, 1908, by W. J. Sutor, as lessee, and Mrs. E. H. Sutor, as owner, of lot No. 2 in block 29 of the city of Austin, against the International & Great Northern Railroad Company, owner, and Otto Wahrmund, lessee, of lot No. 1 in said block. On April 10, 1908, there was filed an intervention by the city of Austin, and on the same day the parties filed an amended original petition, in which the Sutors and the City of Austin appeared as plaintiffs and Thomas J. Freeman, as receiver of the International & Great Northern Railroad Company was named as additional party defendant.

The cause of action asserted in the pleadings of the appellants was to establish an easement or right of way over lot No. 1, in block 29, owned by the defendant railroad company and held by defendant Wahrmund under a lease from the company, and for an injunction requiring the defendants to remove the obstruction from the lot, and for a decree declaring the property an open street-way and sidewalk, and divesting out of the defendants all right and title to the property, and for general relief. The grounds upon which this relief was sought were, first, prescription; second, dedication on the part of the railroad company, and third, what the appellants term in their brief an estoppel.

The defendants answered by general denial of all the allegations contained in plaintiff's petition, except that on October 3, 1876, the plaintiff, Mrs. Emily Sutor, and her deceased husband, sold and conveyed the lot in controversy to the International & Great Northern Railroad Company, under a general warranty deed for a consideration of $3,000, that being the full value of the same; that it owned and held and claimed the same ever since, and still so owned the same by fee simple title. The defendants pleaded also the statutes of limitation of three, five and ten years. The defendants also specially excepted to paragraph 6 of the petition, which exception was sustained and the paragraph stricken out.

The case was tried in October, 1908, and at the close of the evidence the court peremptorily instructed the jury to return a verdict in favor of the defendant, which was done, and judgment entered accordingly.

The principal assignments of error question the action of the trial court in peremptorily instructing a verdict, for the reason, as insisted by appellants, that the evidence was sufficient to require each of the issues—that is, prescription, dedication and estoppel—to be submitted to the jury. The principal facts, as we view the evidence, are as follows:

The International & Great Northern Railroad Company entered the city of Austin either in 1876 or 1877. In 1876 the railroad company obtained from the city of Austin the right to use Third Street, among other streets, for its tracks, and in 1876 the railroad company purchased from the plaintiff Mrs. Sutor and her husband, who was then living, lot No. 1 in block 29. This lot is bounded on the north by lot No. 2, which is owned by Mrs. Sutor and now used and occupied by a building known as the Sutor Hotel; it is bounded on the west by an alley that runs north and south through block No. 29 from Fourth Street to Third Street. Its south boundary is Third Street, with an east frontage on Congress Avenue. The alley mentioned has been used for public travel for many years. This lot is known as lot No. 1, the southeast lot of block 29. The railroad company, on entering the city of Austin, established its depot across Third Street from lot No. 1, fronting on Third Street and Congress Avenue. A short time—the exact time is difficult to determine—from the time of the establishment of its depot, the railroad company occupied with one of its tracks about sixteen feet of the south side of lot No. 1. Since the railroad has been built, and possibly prior to that time, up

to a few years ago, at the time when Congress Avenue was paved, the front of lot No. 1, facing on Congress Avenue, was not accessible to vehicles and horsemen on account of an open gutter or ditch on Congress Avenue in front of the lot; but the lot was open, and not enclosed, except the railroad company erected posts on the lot, from which extended chains, but the time this was done is not definite, and there is some evidence tending to show that these chains were at times removed from the posts. In 1891 or 1892 the Sutors caused to be erected on the adjoining lot No. 2 the building known as the Sutor Hotel. A door or opening was left in the south side of this building which opened on to lot No. 1. In 1897 appellee Wahrmund, under a lease executed by the railway company to him, erected upon lot No. 1, fronting on Congress Avenue, a building used and occupied as a saloon. This building closed up the Congress Avenue entrance to the lot, and it has been continuously occupied and used by him since that date under the lease from the railroad company. In 1903 the railroad company executed a lease to the Sutors, granting to them the privilege of extending galleries to be attached to the Sutor Hotel on the south, over and above lot No. 1. In that instrument the Sutors admitted the ownership in the International &. Great Northern Railroad Company of the lot in question. From the time the railroad company purchased the lot in question from the Sutors up to the time that the Sutor Hotel was erected in 1891 or 1892, the only use of the lot by the public was by pedestrians, who made it convenient in going from one point to another to walk across the lot. It was never used by horsemen or by vehicles. During the progress of the erection of the Sutor building, in 1891 or 1892, the contractor, for his convenience, constructed across the gutter or ditch, in front of the lot on Congress Avenue, a bridge, in order that he could haul upon the lot the material to be used in the building. This continued only for a few months during the progress of the work. After the building was completed the Sutors used the south entrance of the building for the purpose of receiving their goods, etc., used in operating the hotel, and for this purpose wagons drove up to this south entrance, evidently entering the lot from the west end, either through the alley or Colorado Street, the street immediately west, but did not enter from Congress Avenue. After the Wahrmund building was erected in 1897 such use was discontinued. It does not appear that during this period the city or the Sutors asserted any prescriptive right in the property, nor was there ever established any highway across the lot, such as a street, alley or sidewalk; nor does it appear that the railroad company was ever informed that any such right would be asserted by the appellants. It is true that the evidence would justify the assumption that the railroad company knew of the use of the lot by pedestrians, and possibly the additional use to which it was put by the Sutors for the six or seven years' occupancy prior to the time that the appellees took actual possession by building and erecting the structure used as a saloon. The use by the pedestrians, which we regard as merely permissive by the railroad company, could be considered as nothing more than what is termed "cutting across lots." It is a use frequently made of vacant lots in cities, where pedestrians going to and from cer-

tain points for a matter of convenience will cross the lots without following the streets or sidewalks, and such use could hardly be regarded by the owner as adverse to his rights, unless connected with some other facts indicating that the purpose was to create or establish a way for the benefit or convenience of the public. The only additional use to that made by the pedestrians which could have any force at all was that of the Sutors in driving and causing to be driven over the lot vehicles for the purpose of delivering at their south door articles to be used in conducting their hotel, but that was only for about six or seven years, a time too short upon which to base a prescriptive right.

It is clear, from the facts, that they are not sufficient to establish dedication; in fact, the evidence upon this subject is much weaker than was the evidence in International & Great Northern Railroad Co. v. Cuneo, 47 Texas Civ. App., 622, 108 S. W., 704, in which we held that the testimony was not of force sufficient to establish dedication.

There is nothing in the issue of estoppel favorable to the appellants, but there is much tending to establish the fact that the appellants were estopped in their remedy by which they seek to have the building abated and removed or destroyed, and a public way opened over the lot in question. Krause v. City of El Paso, 101 Texas, 211, 106 S. W., 121. Of course, the time of actual occupancy of the building by the appellees in this case was not as long as the time mentioned in the case cited, but we do not regard the time so much as material, provided the facts are of such a character as to indicate that it would be inequitable to apply the harsh remedy invoked by the appellants in this case. The actual occupancy of the building by Wahrmund was over ten years prior to the time of filing this suit. The appellants knew that the building was being erected, and knew that the front entrance to the lot would be closed. The city made no objection and asserted no claim, either by donation, prescription or otherwise, over the lot in question. They had never established or recognized any public way across the lot, nor was any sidewalk established or maintained there. They evidently knew that the work was going on, and that thereby the Congress Avenue entrance to the lot would be closed up. By the deed from the Sutors to the railroad company the appellants evidently knew that the legal title to the lot in question was in the railroad, and that they were asserting one of the rights of ownership by erecting upon the lot a building, unless there should be interposed some right of the city and the Sutors to its erection. They remained silent and took no active steps to prevent the work, and made no complaint.

We are cited to the Cuneo case by the appellants for authority in this instance for maintaining their cause of action on the ground of prescription. We did affirm the Cuneo case, holding that the evidence was sufficient to establish the issue of prescription, but it was an extremely close case on the facts. But, however that may be, it is clear that the evidence here is not as strong as it was in that case. It amounts to nothing more than a permissive use by pedestrians, if we eliminate the additional use pointed out by the Sutors; and, as said before, that was merely for a time so short that prescription can

not be based upon it. The indiscriminate use of an open lot by pedestrians, who may go across it in any direction they may see fit, is hardly a use calculated to impress the owner with the belief that it was intended to be adverse.

Appellant's seventh assignment of error complains of the action of the trial court in refusing to permit plaintiffs to offer testimony of the witness H. M. Metz relating to the transaction between F. W. Sutor on the one hand, and Erwin Eggleston and others representing the defendant railroad company on the other, at the time of the sale of lot No. 1, block 29, by said Sutors to the railroad. The general purpose of this testimony was to establish the fact that, during the negotiations of the purchase of lot No. 1 by Eggleston, the agent of the Railroad Company, it was understood and so represented by Eggleston that lot No. 1 was to be left open and to be only used for railroad purposes. And the further effect sought to be given to the testimony of this witness is that this agreement constituted a part of the consideration that influenced the Sutors to sell the lot. The deed in question contains no recital of this fact. It vests in the International & Great Northern Railroad Company, for a valuable consideration, the fee simple title to the property. It imposes no qualification or limitation upon the right of the owner to enjoy and use the property in any way beneficial to it. The purpose of this evidence would be to restrict the right of use and deprive the owner of one of the beneficial enjoyments that goes with the title as one of its necessary incidents, unless qualified and limited in the instrument itself. It is something more than proving an additional consideration; it is limiting and qualifying the legal estate granted, and we are not able to recognize that this is one of the instances in which it is permissible to prove merely an additional consideration other than that recited in the conveyance.

There is no merit in the eighth assignment of error. The trial court correctly excluded the ordinance offered in evidence by the appellants. Its vitality was dependent upon the fact that its terms should be accepted by the railroad company. There is no evidence, neither was any offered, to show that the railroad company had accepted the ordinance.

The ninth assignment of error complains of the action of the trial court in sustaining appellees' special exception No. 5 addressed to a certain count in the petition. If this issue presented by this count in the petition could be considered as in the case, it could properly be held as disposed of by what we have said in reference to the admissibility of the testimony of the witness Metz. But it appears that the assignment of error in question is not in the transcript. It is only presented for the first time in the brief of appellants. Its consideration is objected to by the appellees on that account. The question raised by the pleading does not, in our opinion, present a fundamental error.

For the reasons stated, we find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.