ACCEPTED
06-17-00054-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/17/2018 6:48 PM
DEBBIE AUTREY
CLERK

IN THE COURT OF APPEALS
FOR THE SIXTH DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
5/17/2018 6:48:47 PM
DEBBIE AUTREY
Clerk

NO. 06-17-00054-CV

CITY OF JUSTIN,

*Appellant,*

vs.

TOWN OF NORTHLAKE,

*Appellee.*

Appealed from the 367th Judicial District Court
Denton County, Texas

_____

# APPELLEE'S MOTION FOR REHEARING
_____

WM. ANDREW MESSER
State Bar No. 13472230
andy@txmunicipallaw.com
BRETT D. GARDNER
State Bar No. 24078539
brett@txmunicipallaw.com
MESSER, ROCKEFELLER & FORT, PLLC
6371 Preston Rd., Suite 200
Frisco, Texas 75034
972.668.6400 - Telephone
972.668.6414 - Telecopier

COUNSEL FOR APPELLEE

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iii

A. The trial court granted summary judgmetn in favor of Northlake on multiple grounds .........................................................................................2

B. This Court must consider all grounds for summary judgment ........................4

C. The Court should affirm the trial court's summary judgment on equitable grounds .........................................................................................5

    1. Laches Declaratory Judgment .................................................................5

    2. Estoppel Declaratory Judgment ...........................................................11

    3. Waiver Declaratory Judgment...............................................................13

D. The Court should affirm the trial court's summary judgment based on validation under Local Governemtn Code § 51.033 ...................................15

CONCLUSION & PRAYER.................................................................................18

CERTIFICATE OF SERVICE .............................................................................19

CERTIFICATE OF COMPLIANCE....................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Baker Hughes, Inc. v. Keco R. & D., Inc.*,
  12 S.W.3d 1 (Tex. 1999)......................................................................................4

*Burch v. City of San Antonio*,
  518 S.W.2d 540 (Tex. 1975).............................................................................16

*Cincinnati Life Ins. Co. v. Cates*,
  927 S.W.2d 623 (Tex. 1996)................................................................................4

*City of Austin v. Garza*,
  124 S.W.3d 867 (Tex. App.—Austin 2003, no pet.)...........................................12

*City of Corpus Christi v. Nueces County Water Control and Improvement Dist. No. 3*,
  540 S.W.2d 357 (Tex. Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.).............7

*City of Dallas v. GTE Southwest, Inc.*,
  980 S.W.2d 928 (Tex. App.—Fort Worth 1998, pet. denied)..............................14

*City of Dallas v. Rosenthal*,
  239 S.W.2d 636 (Tex. Civ. App.—Dallas 1951, writ ref'd n.r.e.).......................12

*City of Fort Worth v. Johnson*,
  388 S.W.2d 400 (Tex. 1964).................................................................................6

*City of Helotes v. Continental Homes of Tex., LP*,
  2016 WL 3085924 (Tex. App.—San Antonio June 1, 2016, no pet.)..................16

*City of Hutchins v. Prasifka*,
  450 S.W.2d 829 (Tex. 1970)...........................................................................7, 10

*City of Mason v. West Texas Utilities Co.*,
  150 Tex. 18, 237 S.W.2d 273 (1951)..................................................................16

*City of White Settlement v. Super Wash, Inc.*,
  198 S.W.3d 770 (Tex. 2006)....................................................................................11

*Condom Sense, Inc. v. Alshalabi*,
  390 S.W.3d 734 (Tex. App.—Dallas 2012, no pet.) ................................................6

*Culver v. Pickens,*
  176 S.W.2d 167 (Tex. 1943).....................................................................................7

*Gray v. Town of Westlake,*
  2-02-173-CV, 2003 WL 22351652 (Tex. App.-Fort Worth Oct. 16, 2003, pet.
  denied)......................................................................................................................16

*Houston Lighting & Power Co. v. City of Wharton*,
  101 S.W.3d 633 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ...................7

*In re Episcopal Sch. of Dallas, Inc.*,
  No. 5:17-CV, ---S.W.3d---, 2017 WL 4533800 (Tex. App.—Dallas Oct. 11, 2017,
  no pet. h.) .................................................................................................................6

*In re Laibe Corp.*,
  307 S.W.3d 314 (Tex. 2010).....................................................................................6

*Inimitable Group, L.P. v. Westwood Group Dev. II, Ltd.*,
  264 S.W.3d 892 (Tex. App.—Fort Worth 2008, no pet.)......................................11

*Jernigan v. Langley*,
  111 S.W.3d 153 (Tex. 2003)...................................................................................13

*Krause v. City of El Paso*,
  106 S.W. 121 (Tex. 1907)................................................................................. 12, 13

*Lathan v. Castillo*,
  972 S.W.2d 66 (Tex. 1998).......................................................................................5

*Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc.,*
  1 S.W.3d 108 (Tex. 1999).......................................................................................14

iv

*Roberts v. Clark*,
  188 S.W.3d 204 (Tex. App.—Tyler 2002, pet. denied) ........................................11

*Sun Exploration & Prod. Co. v. Benton*,
  728 S.W.2d 35 (Tex. 1987)..................................................................................13

*Sutor v. International & G.N.R. Co.,*
  125 S.W. 943 (Tex. Civ. App.—Austin 1910, writ ref'd) ...................................12

*TCI West End, Inc. v. City of Dallas*,
  486 S.W.3d 692 (Tex. App.—Dallas 2016, pet. denied)......................................16

*Tenneco, Inc. v. Enter. Prod. Co.*,
  925 S.W.2d 640 (Tex. 1996)................................................................................14

*Tex. Disposal Sys., Inc. v. Perez*,
  80 S.W.3d 593 (Tex. 2002)....................................................................................5

*Trelltex, Inc. v. Intecx, L.L.C.*,
  494 S.W.3d 781 (Tex. App.—Houston [14th Dist.] 2016, no pet.).......................15

*West v. Robinson*,
  180 S.W.3d 575 (Tex. 2005)..................................................................................5

*Williams v. Moores*,
  5 S.W.3d 334 (Tex. App.—Texarkana 1999, pet. denied) .............................. 14, 15

**Statutes**
TEX. R. APP. P. 41.3................................................................................................14

TEX. R. APP. P. 47.1..................................................................................................5

TEX. LOC. GOV'T CODE § 42.022 ...........................................................................3

TEX. LOC. GOV'T CODE § 42.023............................................................................3

TEX. LOC. GOV'T CODE § 43.021.............................................................................3, 18

TEX. LOC. GOV'T CODE § 43.901.................................................................................3

TEX. LOC. GOV'T CODE § 245....................................................................................10

TEX. LOC. GOV'T CODE § 51.003............................................................... *passim*

_____

NO. 06-17-00054-CV
_____

CITY OF JUSTIN,

*Appellant,*

vs.

TOWN OF NORTHLAKE,

*Appellee.*

Appealed from the 367th Judicial District Court
Denton County, Texas
_____

**APPELLEE'S MOTION FOR REHEARING**
_____


TO THE HONORABLE COURT OF APPEALS:

The Court's opinion focused solely on the authority to exchange extraterritorial jurisdiction ("ETJ") under the Local Government Code.  In so doing, the Court ignored numerous other bases for the trial court's judgment in favor of the Town of Northlake that do not depend upon exchange of ETJ under the Local Government Code, including the equitable declarations sought and received in the trial court of laches, estoppel, and waiver as well as validation.  The Court thus erred because it failed to consider all grounds for summary judgment that the trial court

1

ruled on. As a result, the Court should vacate the judgment, withdraw its opinion, and issue a revised opinion affirming the summary judgment of the trial court in favor of Northlake. Northlake files this motion for rehearing pursuant to Tex. R. App. P. 49.

**A. The trial court granted summary judgment in favor of Northlake on multiple grounds**

The trial court's summary judgment granted, among other things, Northlake's traditional and no-evidence motion for summary judgment. [2 CR 2509]. As part of the judgment, the trial court permanently enjoined the City of Justin from enforcing, exercising, or applying any jurisdiction involving the property at dispute in this case. [2 CR 2510]. In addition, the trial court entered the following declarations:

1. The 1997 City of Fort Worth/Town of Northlake resolution number 2341, and 1997 ETJ boundaries are valid;

2. The City of Justin Ordinance 592-15 adding the property at dispute in this litigation to Justin's ETJ is void *ab initio* and invalid and that the Development Agreement and preliminary plat as to the property are void *ab initio* and invalid;

3. The City of Justin is barred by limitations from contesting the Town of Northlake's 1999 ordinances and boundaries;

4. The Town of Northlake's 1997 joint resolution ETJ area exchange and the 1997 ETJ boundary are validated;

5. The City of Justin is estopped and barred by the doctrines of laches and waiver from denying the validity of the 1997 ETJ boundary between the Town of Northlake and the City of Justin.

2

[2 CR 2510]. The latter two declarations involve validation and equitable principles that do not implicate whether Northlake and Fort Worth could statutorily exchange area under the Local Government Code.

Northlake pled for the validation and equitable relief granted by the trial court. In its second amended petition, Northlake requested injunctive relief and the following declarations:

1. The 1997 Fort Worth/ Northlake resolution and 1997 ETJ boundary is valid pursuant to Section 43.021 of the Local Government Code;

2. the City of Justin Ordinance 592-15 adding the Property to its ETJ is void *ab initio* and invalid, and that the Development Agreement and preliminary plat are void *ab initio* and invalid pursuant to Sections 42.022 and 42.023 of the Local Government Code;

3. Section 43.901 of the Local Government Code validates, and acts as a bar to Justin's contest of, Northlake Ordinances and boundaries;

4. Section 51.003 of the Local Government Code validates Northlake's 1997 joint resolution, ETJ area exchange, and 1997 ETJ boundary;

5. Justin is estopped and barred by laches from denying the validity of the 1997 ETJ boundary between Northlake and Justin.

[2 CR 230-31]. Northlake briefed these equitable and validation issues in its traditional and no-evidence summary judgment motion and prayed for summary judgment on its declaratory judgment claims. [2 CR 921-925; 932]. In short, the equitable and validation issues were pled, briefed, argued, and ruled upon by the trial

3

court, based on uncontested evidence, and the equitable and validation bases do not rely upon the application of former Local Government Code § 43.021.

**B.      This Court must consider all grounds for summary judgment**

The Texas Supreme Court has directed courts of appeals to consider all summary judgment grounds that the trial court rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal when reviewing a summary judgment.  *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 5 (Tex. 1999) (holding that appellate courts must review all of the summary judgment grounds on which the trial court actually rules, whether granted or denied, and which are dispositive of the appeal).  In *Cates*, the Supreme Court reversed the court of appeals because "the trial court specifically ruled on all of the [defendant's] grounds," and thus the appellate court should have considered all grounds on appeal.  *Id.*

There is no dispute that the equitable declarations sought by Northlake regarding estoppel, waiver, laches, and validation were pled, briefed, argued, and preserved for appeal in the trial court and briefed as an issue on appeal.  The Court's opinion however does not address estoppel, waiver, laches, or validation.  In fact, the Court's opinion suggests that Justin's contention that "the 1997 Joint Resolution violated various sections of the Local Government Code" was "dispositive."

4

Opinion, p. 11. The Court thus only addressed the validity of the ETJ exchange between Northlake and Fort Worth under the Local Government Code.

This constitutes error. The Court failed to address all the issues necessary to disposition of the appeal, as required by Texas Rule of Appellate Procedure 47.1. *See Tex. Disposal Sys., Inc. v. Perez*, 80 S.W.3d 593, 594 (Tex. 2002) (holding that the court of appeals erred in failing to consider alternative basis asserted by the appellee to support its attorney's fees award); *Latham v. Castillo*, 972 S.W.2d 66, 70 (Tex. 1998) (the court of appeals erred in remanding the appellant's fraud and breach of contract claims without discussion). "[T]his provision is mandatory, and the courts of appeals are not at liberty to disregard it." *West v. Robinson*, 180 S.W.3d 575, 576-77 (Tex. 2005). The Court did not address the extensive and undisputed evidence in the record that Justin knew of, recognized, and adopted the corporate and ETJ boundaries established after the 1997 Joint Resolution between Northlake and Fort Worth and stayed silent on a challenge to those established boundaries for nearly 18 *years*. The Court also did not address whether the ETJ boundaries have been validated by the Legislature. These issues must be addressed by the Court.

### C. The Court should affirm the trial court's summary judgment on equitable grounds

#### 1. *Laches Declaratory Judgment*

Laches is a type of estoppel that consists of unreasonable delay by one having legal or equitable rights and a good faith change of position by another to his

5

detriment due to the delay. *See City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964). It is "an equitable remedy that prevents asserting a claim due to the lapse of time." *In re Episcopal Sch. of Dallas, Inc.*, No. 5:17-CV, ---S.W.3d---, 2017 WL 4533800, at *10 (Tex. App.—Dallas Oct. 11, 2017, no pet. h.). The doctrine "embodies the principle that equity aids the vigilant and not those who slumber on their rights." *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 758 (Tex. App.— Dallas 2012, no pet.) (internal citations and quotations omitted).

The movant asserting laches must demonstrate that the non-moving party unreasonably delayed in asserting its rights. *See In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010). Moreover, "[u]nlike statutes of limitations, laches is not . . . a mere matter of time; but principally a question of inequity of permitting the claim to be enforced." *Condom Sense*, 390 S.W.3d at 758 (internal citations and quotations omitted). A party seeking the doctrine's protection must therefore demonstrate its good faith and detrimental change in position because of the nonmoving party's delay. *See In re Laibe*, 307 S.W.3d at 318. In *Culver v. Pickens,* the Texas Supreme Court defined laches as follows:

> Laches, in legal significance, is not mere delay but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within the limits allowed by law; but when knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right.

6

*Culver v. Pickens,* 176 S.W.2d 167, 170–71 (Tex. 1943).

Municipalities are not generally subject to laches or estoppel, but the Texas Supreme Court has recognized an exception where "the circumstances clearly demand [estoppel's] application to prevent manifest injustice." *See City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970). In *Houston Lighting & Power Co. v. City of Wharton*, the court held that laches prevailed against a city that "unreasonably delay[ed] asserting its rights" when it accepted franchise tax payments for over 30 years before questioning the basis and amount of the payments. *Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 638-39 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

In *City of Corpus Christi v. Nueces County Water Control and Improvement Dist. No. 3*, a conservation and reclamation district owned rights to certain water from the Nueces River for irrigation purposes and began diverting water from the river in 1911 in order to provide water to the City of Robstown. *City of Corpus Christi v. Nueces County Water Control and Improvement Dist. No. 3*, 540 S.W.2d 357, 361-63 (Tex. Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.). From 1913 to 1923, the district did not divert any water, and so in 1964, the City of Corpus Christi—another entity that took water from the Nueces River—challenged the district's rights to divert the water on the basis of abandonment. *See id.* at 364. The court of appeals noted that:

The City has stood by for over 40 years while the Robstown District has continuously diverted water . . . [i]f the City had any claim of abandonment, it had to have been made in 1923, **it is obviously unjust and unfair for the City to stand idly by, watching the Robstown District become dependent upon the validity of C.F. 70 and then 40 years later claim that such right was lost due to the alleged abandonment by the District prior to 1923**. *Id.* at 378 (emphasis added).

Accordingly, the court applied laches to Corpus Christi's claims. *Id.*

There is undisputed evidence in the record that Justin unreasonably delayed in asserting its rights, and this evidence does not depend upon the validity of the ETJ exchange between Northlake and Fort Worth. Justin recognized Northlake's ETJ as it was after the 1997 exchange with Fort Worth in the following official Justin maps:

- both of Justin's Official Zoning maps dated 2002. [1 CR 998-1000].
- Justin's Master Thoroughfare Plan, adopted by ordinance in 2003. [1 CR 1002-06].
- Justin's Official Zoning Map, Future Land Use Plans, and Water Supply Map from 2004. [1 CR 1012-18, 1026-32].
- Justin's Official Zoning Map, Master Thoroughfare Plan, Future Land Use Plan, and Sanitary Sewer Maps from 2007. [1 CR 1034-52].
- Justin's Water System and Official Zoning Map from 2008. [1 CR 1054-60].
- Justin's Official Zoning Map and Master Thoroughfare Plan in 2010. [1 CR 1062-72].
- Justin's Official Zoning Map dated 2012. [1 CR 1074-78].
- Justin's Master Thoroughfare Plan from 2013. [1 CR 1080-84].
- Justin's Official Zoning Maps, Future Land Use Plan Map, and Master Thoroughfare Plan from 2014. [1 CR 1086-1100].

Justin has known about the Fort Worth and Northlake ETJ area exchange since at least 2002. Since that time, it has consistently recognized the ETJ boundaries as

8

they existed after the 1997 ETJ exchange. Justin's planner admitted that the Southern tract is in Northlake's ETJ. [1 CR 870]. Justin's city manager recognized the Northlake ETJ, and it was not until September 29, 2015 (the date Justin was served with this lawsuit) that she requested Justin change all of its maps to ignore the previous acknowledgment of the Northlake ETJ. [1 CR 871]. She wanted the maps changed "ASAP" and stated that it did not matter how much it cost. [*Id.*]. There is not a scintilla of evidence in the record that Justin ever asserted any rights to the Southern tract at issue before August 10, 2015, when Justin adopted Ordinance 591-15 purporting to expand its ETJ to invade Northlake's established ETJ and also approved a preliminary plat and development agreement for the Legacy Ranch development. [1 CR 893-900; 1 CR 1212-65].

On the other hand, there is undisputed evidence in the record that Northlake relied on Justin's silence.[1] Northlake has approved three plats in its ETJ in reliance on the recognized boundary. [1 CR 1111-33]. These plats are held by Alliance Speedway, Rickey Perry, and Michael Nyikos; the plats have been filed of record in the Denton County deed records. [*Id.*]. Further, Northlake has issued three permits in its ETJ in reliance on the recognized boundary. [*Id.*]. The permits are held by Quicksilver Resources and The Sign Company. [*Id.*]. These property owners relied

---

[1] The evidence is conclusive. And as the Court correctly noted in its opinion, none of Justin's proffered evidence is properly considered in this appeal, Opinion, p. 10; accordingly, Justin has no dispute to Northlake's evidence.

and continue to rely on the recognized 1997 boundary for their vested property rights. *See* TEX. LOC. GOV'T CODE ch. 245.

And the Texas Motor Speedway is dependent upon the recognized ETJ boundary: in 2002, Fort Worth paid Northlake approximately $40,000 under the revenue sharing agreement for payments from 1997 through 2002; from 2003 until 2015, Northlake has received $81,171.17 pursuant to the agreement and the revenue stream is to continue indefinitely. [1 CR 894]. Northlake plans and adopts its annual budget with this revenue stream anticipated from Fort Worth. [*Id.*]. Finally, the area exchanged with Fort Worth is included in Northlake's sanitary sewer master plan and so is included in Northlake's planned service area. [1 CR 1109].

In sum, the undisputed evidence establishes that Justin was aware of Northlake's claimed ETJ boundaries for at least 13 *years* before Justin made any objection. Not only that, but Justin affirmatively represented to the world that it agreed with and accepted the Northlake ETJ boundaries by adopting and approving numerous official maps and official plans that were published and made available to citizens. Some of these maps hung in the chambers of the Justin city council chambers to be observed at every council meeting for years. Northlake submits that these facts and this undisputed evidence make this case one where "the circumstances clearly demand [estoppel's] application to prevent manifest injustice." *See Prasifka*, 450 S.W.2d at 835. Because the declaratory judgment

10

involving laches was not addressed by the Court's opinion and is an independent ground upon which summary judgment should be affirmed, Northlake requests that the Court withdraw its opinion and enter an order affirming the summary judgment of the trial court.

### 2. *Estoppel Declaratory Judgment*

Estoppel is generally defined as conduct that causes another party to materially alter its position in reliance on that conduct. *Roberts v. Clark*, 188 S.W.3d 204, 213 (Tex. App.—Tyler 2002, pet. denied). Equitable estoppel requires a false representation or concealment of material facts, made with actual or constructive knowledge of those facts, with the intention that it should be acted upon to a party without knowledge or means of obtaining knowledge of the facts, who detrimentally relies on the representation. *Inimitable Group, L.P. v. Westwood Group Dev. II, Ltd.*, 264 S.W.3d 892, 902 (Tex. App.—Fort Worth 2008, no pet.).

Ordinarily, municipalities are not subject to estoppel in the exercise of their governmental functions. *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006). But *Super Wash* and its progeny involve a private individual or entity attempting to estop a municipality; the cases do not address and are completely silent as to the applicability of estoppel when *two* municipalities are both attempting to perform competing governmental functions. The trial court appropriately held that Northlake was entitled to summary judgment on its

11

declaration that estoppel prevented Justin from exercising jurisdiction over the Southern tract.

Exceptional circumstances do exist to estop municipalities. In *City of Dallas v. Rosenthal*, a landowner obtained a building permit for renovations on his property, discussed the renovation work with a city inspector, and continued renovations on his property for 18 months when the city attempted to enjoin the use of the property as a violation of the city's zoning ordinance. The city was estopped from applying its zoning ordinance to the landowner's property. *See City of Dallas v. Rosenthal*, 239 S.W.2d 636, 645 (Tex. Civ. App.—Dallas 1951, writ ref'd n.r.e.); *see also City of Austin v. Garza,* 124 S.W.3d 867, 875 (Tex. App.—Austin 2003, no pet.) (city that received a direct donation of land in exchange for land subject to an erroneous plat note could be estopped from later denying the validity of the plat note); *Sutor v. International & G.N.R. Co.,* 125 S.W. 943, 945 (Tex. Civ. App.—Austin 1910, writ ref'd) (city was estopped to seek destruction of building blocking access to claimed public easement over private property, where construction of building was openly visible yet city waited ten years from construction to assert purported easement). In *Krause v. City of El Paso*, a landowner brought suit to prevent the City of El Paso from damaging the owner's house when the house stood on property for over 20 years before the city attempted to enforce a boundary stating that the house was

actually along the path of a highway. *Krause v. City of El Paso*, 106 S.W. 121, 123 (Tex. 1907). The Texas Supreme Court held that:

> Why should a municipal corporation, which has led a citizen into error and caused him to expend large sums of money in the erection of permanent improvements upon a portion of the highway, after 20 years' occupancy, be permitted to destroy the improvements without compensation, simply to assert a legal right? A sense of justice common to all civilized people revolts at such a rule of legalized wrong.

*Id.*

Likewise, Justin should not be permitted to represent to Northlake and the world through its official maps and plans that the ETJ boundaries from the 1997 ETJ exchange were valid and recognized for nearly 20 years before pulling the rug out from under Northlake. In that nearly two-decade interim, Northlake approved plats and issued permits in its ETJ received by exchange with Fort Worth. The Texas Motor Speedway was built and developed based on the recognized ETJ exchange. Justin cannot un-ring every municipal development bell over the last 20 years. Because the Court's opinion did not address the declaratory judgment of estoppel, the Court should withdraw its opinion and issue a new order affirming the judgment of the trial court on this basis.

### 3.    *Waiver Declaratory Judgment*

Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (citing *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37

13

(Tex. 1987)). Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc.,* 1 S.W.3d 108, 111 (Tex. 1999). Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, the question becomes one of law. *Motor Vehicle Bd.,* 1 S.W.3d at 111. Waiver can be established by silence, inaction, or other conduct misleading another party into believing waiver was asserted. *See Tenneco, Inc. v. Enter. Prod. Co.*, 925 S.W.2d 640, 643 (Tex. 1996) (silence or inaction may establish waiver if it is for so long a period that it shows an intent to yield the known right).

The Fort Worth Court of Appeals, in binding precedent,[2] has held that a city's silence for six years was enough to establish waiver as a matter of law. *City of Dallas v. GTE Southwest, Inc.*, 980 S.W.2d 928, 937 (Tex. App.—Fort Worth 1998, pet. denied). In that case, the City of Dallas was held to have waived its right to collect a percentage of franchise fees after six years of failing to request those fees. *See id.* Other cases have also established that silence may create waiver. *See Williams v.*

---

[2] *See* Tex. R. App. P. 41.3 ("In cases transferred by the Supreme Court from one court of appeals to another, the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court. The court's opinion may state whether the outcome would have been different had the transferee court not been required to decide the case in accordance with the transferor court's precedent."). This case was transferred by the Supreme Court from the Fort Worth Court of Appeals to the Texarkana Court of Appeals.

*Moores*, 5 S.W.3d 334, 337 (Tex. App.—Texarkana 1999, pet. denied) (holding that party waived right to claim ownership in property when she had knowledge of its existence for 8 years following probate proceedings but was silent in asserting any claim); *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 791-92 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding that party's acceptance of commission payments of five percent for 6 years without complaint waived right to enforce contractual commission rate of nine percent).

The undisputed evidence here is that Justin was silent as to the alleged invalidity of Northlake's ETJ boundaries after the 1997 ETJ exchange with Fort Worth and actually affirmatively represented that the opposite was true—that the 1997 ETJ exchange was valid and Northlake's ETJ boundaries were recognized. Justin should not be permitted to toss aside the position it took for at least 13 years. Justin waived its right to ignore the 1997 ETJ exchange and waived its right to expand its ETJ into the Southern tract. This is true even if, as the Court's opinion suggested, the Local Government Code did not authorize the 1997 ETJ exchange between Northlake and Fort Worth.

**D.      The Court should affirm the trial court's summary judgment based on validation under Local Government Code § 51.003**

The Court's opinion does not mention validation or Local Government Code § 51.003, which conclusively presumes governmental acts to be valid if there is no legal challenge within three years. This was error, because validation is an

independent ground upon which the trial court granted summary judgment and does not depend upon the authority of Northlake and Fort Worth to exchange ETJ area. In fact, the point of the validation statute is to establish a statute of limitations to the challenge of city actions in order to prevent the kind of instability that Justin's position (and the Court's opinion) would create. *See Gray v. Town of Westlake*, 2–02–173–CV, 2003 WL 22351652, at *3 (Tex. App.–Fort Worth Oct. 16, 2003, pet. denied)*; City of Helotes v. Continental Homes of Tex., LP*, 2016 WL 3085924, at *3 (Tex. App.—San Antonio June 1, 2016, no pet.).

The validation statute is to be liberally construed. *TCI West End, Inc. v. City of Dallas*, 486 S.W.3d 692, 697 (Tex. App.—Dallas 2016, pet. denied). In fact, curative or remedial legislation is to be "given the most comprehensive and liberal construction possible." *Burch v. City of San Antonio* 518 S.W.2d 540, 544 (Tex. 1975); *City of Mason v. West Texas Utilities Co.*, 150 Tex. 18, 237 S.W.2d 273, 280 (1951).

Local Government Code § 51.003 provides in part:

### § 51.003 Municipal Act or Proceeding Presumed Valid

(a) A governmental act or proceeding of a municipality is conclusively presumed, as of the date it occurred, to be valid and to have occurred in accordance with all applicable statutes and ordinances if:

(1) the third anniversary of the effective date of the act or proceeding has expired; and

> (2) a lawsuit to annul or invalidate the act or proceeding has not been filed on or before that third anniversary.

TEX. LOC. GOV'T CODE § 51.003. The validation act of § 51.003 covers the 1997 ETJ boundary and 1999 Northlake boundary ordinances. And it is uncontested that Justin did not file suit to annul or invalidate the 1997 Joint Resolution, the 1997 ETJ boundary or the 1999 Northlake boundary ordinances until this suit in 2015. The 1997 ETJ Joint Resolution, 1997 ETJ boundary, and 1999 Northlake ordinances are therefore *conclusively* valid.

The Court's opinion did not address this issue.[3] Validation under § 51.003 does not depend upon Northlake's receipt of ETJ area from Fort Worth. The trial court correctly granted summary judgment in favor of Northlake based on a validation declaration. Accordingly, the Court should address the validation statute and because it is undisputed that Justin did not challenge the ETJ exchange, the ETJ boundary, or the Northlake ordinances establishing official maps until 18 years after the ETJ exchange and 16 years after the Northlake map ordinances, the Court should withdraw its opinion and enter an order affirming the judgment of the trial court on this basis.

---

[3] In fact, the Court noted that "[w]e make no finding as to whether the agreement between Northlake and Fort Worth violated any portion of the Local Government Code." Opinion, p. 17 n. 22. Thus, the Court did not hold that Northlake's ETJ exchange or ordinances were void.

17

## CONCLUSION & PRAYER

The equitable and validation declarations upon which Northlake was granted summary judgment were not addressed by this Court's opinion. This constitutes error. Whether the former Local Government Code § 43.021 authorized the ETJ exchange between Fort Worth and Northlake does not bear on whether equity requires upholding the ETJ exchange and preventing Justin's disruption of boundaries nearly 20 years after the fact. The Court should grant the motion for rehearing, vacate its opinion, withdraw its judgment, and issue a revised opinion and judgment affirming the judgment of the trial court in favor of the Town of Northlake. The Town requests all other relief to which it may be entitled.

Respectfully submitted,

*/s/ Wm. Andrew Messer*
**WM. ANDREW MESSER**
STATE BAR NO. 13472230
andy@txmunicipallaw.com
**BRETT D. GARDNER**
State Bar No.  24078539
brett@txmunicipallaw.com
**MESSER ROCKEFELLER & FORT, PLLC**
6371 PRESTON ROAD, SUITE 200
FRISCO, TEXAS 75034
972.668.6400 - TELEPHONE
972.668.6414 - FACSIMILE

**COUNSEL FOR APPELLEE**

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing instrument has been sent via electronic service to all attorneys of record, in compliance with Rule 6.3 of the TEXAS RULES OF APPELLATE PROCEDURE, on May 17, 2018.

*/s/ Wm. Andrew Messer*
**WM. ANDREW MESSER**

**CERTIFICATE OF COMPLIANCE**

This is to certify that, according to the computer program used to prepare this document, the document contains 4,414 words in compliance with Texas Rule of Appellate Procedure 9.4(i)(3), excluding those items that are not to be included in the word count pursuant to Texas Rule of Appellate Procedure 9.4(i)(1).

*s/ Wm. Andrew Messer*
**WM. ANDREW MESSER**