**Opinion filed March 19, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00290-CV

_____

## IN THE INTEREST OF A.H., S.C., AND C.M., CHILDREN

**On Appeal from the 220th District Court**
**Comanche County, Texas**
**Trial Court Cause No. FM01518**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and the fathers of the children. The mother filed an appeal, as did C.M.'s father.[1] On appeal, the parents challenge the legal and factual sufficiency of the evidence in six issues. Because the evidence is sufficient to support at least two of the trial court's findings, we affirm the trial court's order.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2019). To terminate

---

[1]For ease of reference in this opinion, we will refer to the mother and C.M.'s father, collectively, as "the parents" and to C.M.'s father as "the father."

parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that the parents had committed five of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), (O), and (P). Specifically, the trial court found that the mother had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being; that the mother had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being; that the mother had constructively abandoned the children; that the mother had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent for abuse or neglect; and that the mother had used a controlled substance in a manner that endangered the children and either failed to complete a substance abuse treatment program or abused a controlled substance after completing such a program. The trial court also found, pursuant to Section 161.001(b)(2), that termination of the mother's parental rights would be in the best interest of the children. The trial court made the same findings with regard to the father and his child.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or

2

conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record reflects that the mother had seven children, who ranged in age from twenty-one years old to three years old. This appeal involves only three of those children: A.H., who was seventeen years old at the time of trial; S.C., who was eight years old at the time of trial; and C.M., who was three years old at the time of trial. With respect to the mother's other four children, the record reflects that the four-year-old lived with the mother's cousin—to whom the mother had previously given legal custody of that child, that the fourteen-year-old lived with her father in another state, that the nineteen-year-old had not spoken to the mother since that child attempted suicide, and that the twenty-one-year-old was in jail for sexually assaulting one of his sisters. The mother testified that she had been arrested recently

3

but that she was "not exactly sure the charge, but they said that I know that my oldest son was touching my daughter. I don't see the relevance to that, by the way."

The three children at issue in this case lived with the mother and the father at the time that the Department became involved in their lives. They were removed from the care of the parents due in large part to the parents' use of methamphetamine.

During the Department's investigation, the father tested positive for methamphetamine. He continued to test positive for methamphetamine throughout the case below—except for the nine-month period that he was incarcerated for the offense of possession of drugs. After being released from incarceration, the father returned to the use of methamphetamine within two weeks. He did not pass a single drug test while this case was pending below.

The mother passed only one drug test administered by the Department. She either tested positive for methamphetamine or admitted that she would test positive for methamphetamine on every other drug test to which she was asked to submit. The mother testified that, after the children were removed, she and the father began using methamphetamine every day. Although the mother admitted that the father had used methamphetamine prior to the children's removal, she said that she did not start using methamphetamine until after the children were removed. An exhibit admitted at trial indicates otherwise. The exhibit indicates that, at a family group conference that was held after the Department became involved with the parents, the mother said that she had last used methamphetamine in October 2017, which was prior to the Department's initiation of this case.

The record reflects that, in addition to their use of methamphetamine, the parents had also engaged in domestic violence in the children's presence. Not long after the Department became involved with the family, the mother summoned the police because she and the father were fighting and he would not leave.

The parents were ordered to do a variety of services as part of their family service plan. Neither parent complied. The mother blamed her lack of transportation for her failure to complete many of her services. Although the case had been pending for seventeen months on the day that the final hearing commenced, the parents asked the trial court for more time to complete their services. The mother testified that she would "go right to rehab now" and that she was going regardless. After the parents asked for more time, the trial court recessed the trial for ten weeks, giving the parents extra time to work on their service plan and, in particular, giving the mother an opportunity to attend rehab. During the ten-week recess, however, the mother did not go to "any rehab or drug program," and the parents continued to use methamphetamine.

In their first five issues, the parents challenge the legal and factual sufficiency of the evidence to prove grounds (D), (E), (N), (O), and (P). We need only address one of these five issues—the parents' challenge to the trial court's finding under Section 161.001(b)(1)(E). *See In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283

S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.* Domestic violence and a propensity for violence may also constitute evidence of endangerment. *C.J.O.*, 325 S.W.3d at 265; *In re C.E.K.*, 214 S.W.3d 492, 497 (Tex. App.—Dallas 2006, no pet.); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Based upon evidence that the parents engaged in domestic violence in the children's presence and that the parents used methamphetamine while the children were in their care, the trial court could have found by clear and convincing evidence that the mother and the father engaged in a course of conduct that endangered the children. We hold that the evidence is legally and factually sufficient to uphold the trial court's finding as to the mother and the father under subsection (E). Accordingly, we overrule the mother's and the father's second issue. Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to each parent under subsection (E), we need not reach the parents' first, third, fourth, and fifth issues. *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35.

In their sixth issue, the parents challenge the legal and factual sufficiency of the evidence to support the trial court's finding that termination of the parents' parental rights was in the best interest of the children. The parents acknowledged that they did not have appropriate housing for the children and that they had not completed the court-ordered services necessary to obtain the return of the children. The parents also acknowledged their ongoing use of methamphetamine. The conservatorship caseworker and the children's attorney ad litem both believed that termination of the parents' parental rights would be in the children's best interest.

The children were doing well at the time of the final hearing. A.H. had been placed with the mother's cousin, and the cousin wanted to adopt A.H., which would provide A.H. with permanency as well as other benefits. According to the mother's

cousin, all of the mother's children had lived with the cousin "on and off their whole life." The children had previously been placed with the cousin for almost two years due to the mother's involvement with child protective services in another state. The cousin, who was like an older sister to the mother, testified that she would not permit the mother to come visit the children; the cousin was "done with [the mother] on that level."

S.C. and C.M. had been placed in foster care. S.C. had improved behaviorally and emotionally while in her foster home, but she still loved her mother. C.M. had also made great improvements at the foster home in which he was placed at the time of trial. Although the respective foster parents expressed a desire to adopt S.C. and C.M., the trial court ordered the Department to determine whether adoption by the children's relatives was a viable option. We note that the mother's cousin had asked that S.C. be placed with her.

Based upon the evidence presented in this case, we defer to the trial court's findings as to the children's best interest. *See C.H.*, 89 S.W.3d at 27. We hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's and the father's parental rights would be in A.H.'s, S.C.'s, and C.M.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the children's desires (which were not expressly mentioned at the hearing), the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of those involved, the plans for the child by the Department, the parents' use of methamphetamine, the father's criminal activity, and the stability of the proposed respective placements, we hold that the evidence is legally and factually sufficient to support the findings that termination of the mother's and the father's parental rights is in the best interest of the children. *See id.* We cannot hold that the findings

7

as to best interest are not supported by clear and convincing evidence. We overrule the mother's and the father's sixth issue.

The order of the trial court is affirmed.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


March 19, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.